## STETSON *v.* THE GLADIATOR.

## SAME *v.* THE GEORGE MOON.

*(District Court, D. Massachusetts.* April 2, 1890.)

1. COLLISION—BETWEEN STEAM-VESSEL AND TOW.
   As the steam-yacht S. passed out from her anchorage under a hard-a-port wheel, a steam-tug was observed on her port bow, about 800 feet distant. By signal, it was agreed that the S. should pass astern, while the tug kept her course, and the S.'s wheel was put to starboard, and she continued without slackening speed until almost under the tug's stern, between her and her tow, which was connected with her by a hawser, and which was then first observed by the S., whose engines were then reversed, but the tow collided with her. The S. had no forward lookout. *Held,* that the S. was in fault for not having a lookout, for not sooner seeing the tow, and for not slackening speed.

2. SAME—NEGLIGENCE.
   After the agreement by signal, it was not negligence in the tug to continue without change of course, though the S. would otherwise have had the right of way, and the tug had the right to presume that the S. would observe the tow.

3. SAME.
   The tow having no propelling power of its own, there is no ground for charging it with negligence.

Libel for Collision.

*T. H. Russell* and *D. A. Doer,* for libelant.

*C. W. Clifford,* for the Gladiator.

*Frederick Dodge,* for the George Moon.

NELSON, J. · This libel was filed by John Stetson, owner of the steam-yacht Sapphire, against the steam-tug Gladiator and the barge George Moon, to recover damage caused by a collision, which occurred in Boston harbor on the 17th of September, 1889. At about half past 3 o'clock of the afternoon of that day, the weather being fine, the Sapphire left her anchorage on the South Boston side of the harbor, opposite the Commonwealth docks, with her owner on board, bound out to sea on a pleasure trip. About the same time the Gladiator started out from the East Boston side, having in tow astern with a 60-fathom hawser the coal-barge George Moon, and was just turning into the main channel on her way down the harbor, bound for New York; her speed being about six knots. As the Sapphire passed out from her anchorage on a circling course under a hard-a-port wheel, her master, who was on the bridge at the wheel, observed the Gladiator over his port bow, about 800 feet distant. At this point the Gladiator sounded two blasts on her steam-whistle, signifying to the Sapphire that she was keeping her course, and that the Sapphire, if intending to cross her course, should pass astern. She also slackened her speed. The master of the Sapphire, after assenting to the course proposed by the Gladiator by two answering blasts on his whistle, put his wheel over to starboard; but intent on watching the tug, now round on his starboard bow, he did not see the barge towing astern on his port bow, or the connecting hawser, and continued on without slackening his speed, which was eight knots, until the yacht was nearly under the stern of the tug, between her and the

tow. Then for the first time becoming aware of the barge and hawser, he stopped and reversed his engine. The master of the Gladiator, observing the predicament of the Sapphire, also stopped his engine and dropped the hawser. But it was then too late for the Sapphire either to advance or retreat. The barge came on under the impetus of her forward motion, and struck the yacht on the port side, inflicting serious damage. The Sapphire had no lookout stationed forward.

Upon these facts, about which there does not seem to be any great difference between the parties, and so far as they are disputed are stated most favorably for the Sapphire, it is obvious that the Sapphire was in fault for not having a lookout, for not sooner seeing the barge, and for not slackening her speed. A lookout stationed forward would have seen and reported the barge, and had the Sapphire slowed up, she would not have run into the danger. No blame can be attributed to those in charge of the tug. The negligence charged against her is that she was towing with too long a hawser in the narrow channel, and that as the Sapphire had the right of way, being on the starboard side of the Gladiator, the latter was bound to keep out of her way. But by accepting the course proposed by the Gladiator, the Sapphire agreed that the Gladiator should keep her course, and that she would cross astern of her and her tow. The method of crossing being thus agreed upon, the Gladiator was right in keeping on without change of course. Having thus undertaken to pass astern, the Sapphire was bound in so doing to use all proper precautions to keep clear. The master of the tug had the right to presume that those in charge of the Sapphire would use their eyes and observe the movements of the barge as well as the tug, and act accordingly. In regard to the length of the hawser, it is only necessary to say that the barge was being towed in the usual way, and with no unnecessary length of hawser. There is no evidence whatever upon which to charge the barge with fault. Having no propelling power of her own, it was only by sheering that she could change her direction. But after the Sapphire passed between her and the tug, no amount of sheering that she was capable of could avail to avert the collision.

Libel dismissed, with costs.